UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| EDWARD L. POOL,<br><br>                Plaintiff,<br><br>  vs.<br><br>HAROLD L. WHITE, in his individual capacity,<br><br>                Defendant. | NO. 2:16-CV-00218-JLQ<br><br>ORDER RE: PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT |

BEFORE THE COURT is Plaintiff's Motion for Partial Summary Judgment Re: Liability (ECF No. 22). Response and Reply briefs have been filed. (ECF No. 25 & 32). Plaintiff set the motion for hearing without oral argument, and neither side has requested oral argument. Accordingly, the matter was submitted on the briefs.

**I. Introduction**

Plaintiff Edward Pool alleges he was wrongfully terminated by Defendant White in violation of his First Amendment rights. Plaintiff alleges he was employed by the Washington State Department of Transportation ("WSDOT") from August 1, 2015 to March 3, 2016. (Complt. ¶ 2.2). Defendant White was the Assistant Regional Administrator for WSDOT at all relevant times. Plaintiff alleges that while at work on February 8, 2016, he "made a comment and gesture critical" of President Obama. (Complaint ¶ 2.2). Plaintiff claims Defendant White fired him on March 3, 2016, because of this comment and gesture. Plaintiff brings his claim pursuant to 42 U.S.C. § 1983 based on the First Amendment. Defendant White admits to discharging Plaintiff, but denies the termination was in violation of Plaintiff's First Amendment rights.

ORDER - 1

## II. Factual Background

In summary judgment proceedings, the facts are viewed in a light most favorable to the non-movant, in this case the Defendant. The following facts are set forth in a light favorable to the Defendant and key factual disputes are noted.

Defendant Harold White is the Assistant Regional Administrator for Operations at WSDOT. Plaintiff Edward Pool was hired on or about July 30, 2015, to a "Non-Permanent, In-Training Appointment" as an Information Technology Specialist. (ECF No. 28-2, Letter of July 30, 2015). The Appointment letter informed Mr. Pool, "this appointment is anticipated to last for a period of approximately one year; however, this appointment may end at any time with one working days' notice." (*Id*.). Pool began work on August 3, 2015, and his immediate supervisor was Ken Heale.

The events precipitating Pool's termination occurred on February 8, 2016. On that day, around 4:30 p.m., Pool came to the doorway of co-worker Robin Pritchard's office. (ECF No. 28-3, Pritchard Depo. p. 43). He stood in the doorway for a minute or two, and neither he or Ms. Pritchard said anything, as she was working and watching traffic monitors. (*Id*. at 43-45). He then made a simulated gesture of pointing a rifle at Ms. Pritchard. She asked, "what are you doing?" (*Id.* at 45-46). He did not respond immediately, and she then asked, "well, what are you doing?" (*Id.* at 46). Pool then raised the pretend gun away from Ms. Pritchard and said, "I'm going to shoot Obama." (*Id.*). Pool then left.

Pritchard testified she felt "paralyzed" by the comment, could not concentrate, and could not effectively perform her job duties during the remainder of her shift, from 4:30 p.m. to 6:00 p.m. (*Id.* at 53). Approximately 34-hours after this incident, at 2:50 a.m. on February 10, 2016, Pritchard sent an e-mail to Ken Heale and Mike Kress, with the subject line "Panic attacks" and which read as follows:

> On Monday afternoon around 4:30 Larry was leaning on his office door and had his arms kind of pointing at me, I asked him what he was doing and it was like he raised a rifle and pointed it away from me and said he was going to kill Obama.
> I've tried to stop thinking about it, but I can't sleep and I have panic attacks. I will be going to my doctor tomorrow to get some medication. I will bring in a

ORDER - 2

doctors note for being under a doctors care.

(ECF No. 28-3; Pritchard Depo Ex. 2). Pritchard was then subsequently absent from work for several weeks on Family Medical Leave Act (FMLA) leave allegedly related to anxiety.

Mr. Heale received the email in the early morning hours of February 10, 2016, and at about 7:00 a.m. contacted Bobbi Collins Whitehead, the Human Resources Manager. (ECF No. 28-5, Heale Depo. p. 14). Heale and Whitehead arranged to meet with Plaintiff at about 2:30 p.m. on February 10, 2016, to talk to him about what was described in the email. Whitehead testified that Pool admitted making the comment about Obama, but said it was a joke and that he needed to be careful in jest about making such comments. (ECF No. 28-4, Whitehead Depo. p. 20). The workplace violence policy was discussed at the meeting. (*Id.* at 21). Whitehead testified the incident was "inherently disruptive" to the workplace, resulting in a situation where a fact-finding investigation was required. (*Id.* at 30). She further testified Pritchard's absence from the workplace was "significant". (*Id.*).

The WSDOT "Violence-Free Workplace" Policy (hereafter "Policy") provides in relevant part: "Violence, threats, or intimidation of any kind is strictly prohibited and will be cause for appropriate management intervention to diffuse the incident and restore a violence-free work environment." (ECF No. 28-1; White Depo. Ex. 3). The Policy further provides "unacceptable behavior" includes verbal "threats toward a person" and "intimidation". (*Id.*). The Policy also defines as "unacceptable behavior" the "use or threatened use of a weapon" and "threatening, intimidating gestures." (*Id.*) Finally, the Policy provides that violation of the standards of conduct set forth may result in "disciplinary action up to and including dismissal." (*Id.*)

Defendant White made the ultimate decision to terminate Plaintiff. (ECF No. 28-1, White Depo. p. 7). He concluded Plaintiff's actions violated the workplace violence policy and considered that Plaintiff was a temporary employee. (*Id.*). He had been informed by Mr. Heale that Plaintiff "had made a threat against the President of the

ORDER - 3

United States" and had made a simulated gesture of holding a rifle while making the threat. (*Id*.). The threat was taken seriously enough that WSDOT contacted Washington State Patrol Captain Otis to inquire whether the threat should be reported to the Secret Service. (*Id*. at 14). White additionally discussed it with a WSDOT employee, Mike Dubee, who had previously served as a WSP Captain. Otis recommended it be reported. Dubee told White it probably did not need to be reported, and ultimately it was not reported. (*Id*. at 14). White prepared a letter terminating Plaintiff on February 19, 2016. (ECF No. 28-1, White Depo Ex. 1).

The above-recitation of facts is largely undisputed. Plaintiff admits making a statement about assassinating the President and making a simulated gun shooting gesture. There is some dispute concerning the exact words used and there is also a dispute as to context. Plaintiff claims he had been talking with Pritchard about politics earlier in the day and some of Obama's "ridiculous" actions. (Pool Depo. p. 48-49). However, Plaintiff cannot recall what policies were allegedly discussed, and Pritchard denies any political conversation occurred that day. Plaintiff's Statement of Fact also overlooks testimony or misrepresents the record by stating: "There is no evidence that Mr. Pool's gun simulation conduct disrupted the DOT workplace in any fashion." (ECF No. 23, ¶ 13). In fact, Pritchard testified to the immediate disruptive effect, and she then took subsequent leave for anxiety. Whitehead, *supra*, also discussed the "inherently disruptive" nature of the incident and significant impact of Pritchard's absence.

### III. Discussion

### A. Summary Judgment Standard

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the material facts before the court. *Northwest Motorcycle Ass'n v. U.S. Dept. of Agriculture*, 18 F.3d 1468, 1471 (9th Cir. 1994). The moving party is entitled to summary judgment when, viewing the evidence and the inferences arising therefrom in the light most favorable to the nonmoving party, there are no genuine issues of material fact in dispute. Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252

ORDER - 4

(1986). While the moving party does not have to disprove matters on which the opponent will bear the burden of proof at trial, they nonetheless bear the burden of producing evidence that negates an essential element of the opposing party's claim and the ultimate burden of persuading the court that no genuine issue of material fact exists. *Nissan Fire & Marine Ins. Co. v. Fritz Companies*, 210 F.3d 1099, 1102 (9th Cir. 2000). When the nonmoving party has the burden of proof at trial, the moving party need only point out that there is an absence of evidence to support the nonmoving party's case. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001).

Once the moving party has carried its burden, the opponent must do more than simply show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the opposing party must come forward with specific facts showing that there is a genuine issue for trial. *Id*.

Although a summary judgment motion is to be granted with caution, it is not a disfavored remedy: "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)(citations and quotations omitted).

### B. First Amendment Claim

"The First Amendment shields public employees from employment retaliation for their protected speech activities." *Karl v. City of Mountlake Terrace*, 678 F.3d 1062, 1068 (9th Cir. 2012). In order to prevail on a First Amendment claim, a plaintiff must initially prove that his statements were constitutionally protected. *Johnson v. Multnomah Co.*, 48 F.3d 420, 422 (9th Cir. 1995). It is the plaintiff's burden to show the speech at issue "substantially involved matters of public concern." *Id*. If the plaintiff meets the burden, the burden then shifts to the employer to show that its administrative interests outweigh the First Amendment interest. *Id*. "Speech involves a matter of public concern when it can fairly be considered to relate to any matter of political, social, or other concern to the

community." *Id.* Whether the employees's speech addresses a matter of public concern is generally a question of law to be determined by the content, form, and context of the statement. *Karl*, 678 F.3d at 1069. Of the factors, content is generally the most important. *Id.*

In this case, there appears to be a dispute of fact as to the exact words used. Pritchard states Plaintiff said, "I'm going to shoot Obama." Plaintiff claims he said, "well, if he (Obama) does that, I will be the first to assassinate him." (ECF No. 23, ¶ 4). "It is well established that the First Amendment protects speech that others might find offensive or even frightening." *Fogel v. Collins*, 531 F.3d 824, 829 (9th Cir. 2008). However, the protections afforded are not absolute. *Id.* "True threats" are not protected. "A true threat is an expression of an intention to inflict evil, injury, or damage on another and such speech receives no First Amendment protection." *Id.* at 830.

True threats to kill, kidnap, or inflict bodily harm on the President of the United States are not protected speech. In fact, such threats are subject to criminal prosecution. 18 U.S.C. § 871. "Deciding whether political speech is protected political hyperbole or an unprotected true threat can be an issue for a jury, particularly in cases of criminal prosecution." *Fogel*, 531 F.3d at 829. There has been confusion concerning the standard for determining whether a statement constitutes a "true threat" *Id.* at 831 ("This circuit has thus far avoided deciding whether to use an objective or subjective standard in determining whether there has been a true threat."). Under an objective standard, the court asks, "whether a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of intent to harm or assault." *Id.* The subjective standard requires that the speaker subjectively intended the speech as a threat. *Id.* The objective standard looks at the surrounding factual context including the "reaction of listeners." *Id.*

The reaction of the primary listener, Ms. Pritchard, was quite strong. She was immediately upset, could not focus for the remainder of her day, and ultimately took medical leave related to anxiety. Plaintiff's employer took the threat seriously enough to

ORDER - 6

speak to two law enforcement officers and considered reporting it to the Secret Service. As to subjective intent, Plaintiff contends the statement was made in jest and that he and Ms. Pritchard had been joking. He testified there was "laughing" and they were in a "jovial, joking mood". (ECF No. 24-1, Pool Depo. p. 49).

### C. Pickering Five Step Analysis

Plaintiff argues the statement was clearly not a "true threat". Defendant has not moved for summary judgment on the basis that the statement was unprotected speech nor fully addressed the "true threat" issue in its Response. Instead, the parties agree the five step test derived from *Pickering v. Board of Education*, 391 U.S. 563 (1968), should govern the analysis. The Ninth Circuit has described the sequential five-step *Pickering* test as follows:

> First, we consider whether the plaintiff has engaged in protected speech activities, which requires the plaintiff to show that the plaintiff: (1) spoke on a matter of public concern; and (2) spoke as a private citizen and not within the scope of her official duties as a public employee. If the plaintiff makes these two showings, we ask whether the plaintiff has further shown that she (3) suffered an adverse employment action, for which the plaintiff's protected speech was a substantial or motivating factor. If the plaintiff meets her burden on these first three steps, thereby stating a prima facie claim of First Amendment retaliation, then the burden shifts to the government to escape liability by establishing either that: (4) the state's legitimate administrative interests outweigh the employee's First Amendment rights; or (5) the state would have taken the adverse employment action even absent the protected speech.

*Karl*, 678 F.3d at 1068. Plaintiff argues "there are no factual disputes with respect to any of these five factors." (ECF No. 22, p. 6). Defendant argues there are disputed issues of material fact as to four of the five factors. Defendant does not contest the second factor.

Concerning the first factor, Plaintiff claims he and Ms. Pritchard were engaged in a political policy discussion. However, Plaintiff does not recall the details or what policy actions were discussed. (ECF No.24-1, Pool Depo. p. 50). Ms. Pritchard denies they were engaged in a political policy discussion. It appears to be Plaintiff's position that mentioning the President equates to speaking on a matter of public concern. However, making a true threat against the President would not constitute speaking on a matter of

ORDER - 7

public concern. Plaintiff relies heavily on *Rankin v. McPherson*, 483 U.S. 378, 383 (1987), and argues it is "dispositive on this issue, and indeed, on this case." (ECF No. 22, p. 7). Defendant counters that *Rankin* is distinguishable and provides Plaintiff "no aid at all." (ECF No. 25, p. 8).

In *Rankin*, the plaintiff was a clerical assistant in the county constable's office. While at work, plaintiff and some co-workers heard report on the radio of the attempted assassination of President Reagan. Discussion was then had of what motivated the attempt and of medicaid, welfare, and food stamp programs. One co-worker said the President is cutting those programs and plaintiff stated: "If they go for him again, I hope they get him." *Id.* at 382. She was fired for this statement. The majority, in a 5-to-4 decision, found plaintiff's statement in *Rankin* was on a matter of public concern and the state had not met its burden of justifying the discharge on legitimate grounds.

The *Rankin* majority recognized that "a threat to kill the President would not be protected by the First Amendment." *Id.* at 387. However, the court considered the statement "was made in the course of a conversation addressing the policies of the President's administration" and was made in response to a news bulletin. The four dissenting justices noted the statement was "only one step removed" from an assassination threat which is entitled to no First Amendment protection. *Id.* at 397. The dissenters stated: "A statement lying so near the category of completely unprotected speech cannot fairly be viewed as lying within the 'heart' of the First Amendment's protection; it lies within a category of speech that can neither be characterized as speech on matters of public concern nor properly subject to criminal penalties." *Id.* at 397-98.

The statement at issue here, "I'm going to shoot Obama," or "well, if he (Obama) does that, I will be the first to assassinate him," is farther from the heart of First Amendment protection than the statement in *Rankin*. The statement in *Rankin* was an aspirational statement of ill-intent concerning the hypothetical actions of others. Defendant's evidence is that Pool's statement was a direct threat that he himself would act against the President. There is also a dispute of fact as to whether Pool's statement was

ORDER - 8

made in the context of a conversation on political policy.

Although the issue of whether speech is on a matter of public concern can often be determined as a question of law, here there is a dispute as to the exact words said and a significant dispute as to the context in which they were said. Plaintiff is not entitled to summary judgment on this disputed issue.

The second factor is not disputed. Plaintiff spoke as a private citizen and not within the scope of his official duties as a public employee.

On the third factor, it is undisputed Plaintiff suffered an adverse employment action -- he was terminated. Defendant disputes whether Pool's statement concerning President Obama was a substantial or motivating factor. Plaintiff relies on White's testimony that if not for the statement and gesture: "There would have been no discussion of termination." (ECF No. 24-2, White Depo. p. 18). White also testified the statement "led to the decision" but there were other factors. (*Id.*). White submitted a Declaration in support of his Response which states he would have terminated Plaintiff for violation of the workplace violence policy regardless of whether President Obama was identified as the intended victim. (ECF No. 27, ¶ 5-6). He states if Plaintiff "had made the threat against a co-worker, a family member or a perfect stranger I would have reached the same conclusion and taken the same action." (*Id.* at ¶ 6). It would appear there is no genuine issue of material fact that Plaintiff's statement was a substantial or motivating factor in his termination.

Plaintiff has arguably submitted sufficient evidence on the first three factors to support a prima facie case, but this is Plaintiff's Summary Judgment Motion, and Plaintiff has not established the three factors as a matter of law. Even if Plaintiff had established an undisputed case on the first three elements, questions of fact on step four preclude summary judgment for Plaintiff.

On the fourth step, balancing the state's legitimate interests with the employee's protected speech, Plaintiff argues there was no disruption to the workplace. Plaintiff claims: "His comment and statement caused no disruption in the work place, and did not

interfere in any fashion with any employee's ability to do his/her work." (ECF No. 22, p. 11). This ignores the evidence of record. Ms. Pritchard testified to the immediate disruptive effect on her ability to focus at work, and she then took subsequent leave for anxiety. Whitehead, the Human Resources Manager, also testified concerning the "inherently disruptive" nature of the incident and significant impact of Pritchard's absence. Pritchard emailed her supervisor that she was having panic attacks from the incident and obtained a FMLA certification from a physician supporting her need to take medical leave for anxiety. (ECF No. 29). The evidence in the summary judgment record supports a conclusion Plaintiff's actions did create a disruption in the workplace. The Ninth Circuit has stated, "we have long given public employers significant discretion to discipline employees if their conduct disrupts the workplace." *Nichols v. Dancer*, 657 F.3d 929, 931 (9th Cir. 2011). "The employer need not establish that the employee's conduct actually disrupted the workplace--reasonable predictions of disruption are sufficient." *Id.* at 933. Further, "in striking the *Pickering* balance, we must give public employers wide discretion and control over the management of their personnel and internal affairs including the prerogative to remove employees whose conduct hinders efficient operation and to do so with dispatch." *Id.*

Plaintiff's Statement of Fact (ECF No. 23), at Paragraph 13, states: "There is no evidence that Mr. Pool's 'gun simulation conduct' disrupted the DOT workplace in any fashion." Paragraph 13 cites to pages 28 and 29 of Mr. White's deposition testimony. Those pages do not support the Plaintiff's statement. Mr. White was asked if he was aware of disruptive conduct "other than Ms. Pritchard claiming she couldn't come to work because she had anxiety". He stated he believed that was the only event. (ECF No. 24-2, White Depo. p. 28). Mr. White was asked if Pool's conduct prohibited Ms. Pritchard from doing her work on the day it occurred, and White responded: "I would say yes, it did, because she got upset and left the workplace." (*Id.*) White was then asked if he had "any evidence" Pritchard was disrupted on the day in question and he responded, "no". (*Id.* at 28-29). White was then asked again if he has any evidence other than Ms. Pritchard

being unable to come to work due to anxiety to support the claim the workplace was disrupted, and he replies he doesn't recall any other disruption. (*Id*. at 29).

White's testimony may be somewhat ambiguous, but the overall impression of the two-pages is Mr. White was unaware of disruption in the workplace other than Ms. Pritchard becoming upset that day and missing work due to anxiety. Ms. Pritchard's own sworn testimony supports the claim that after the incident she was unable to focus and perform her job duties for the remaining 90-minutes of her shift. (ECF No. 28-3, Pritchard Depo. p. 53). Pritchard later obtained a FMLA certification to miss work due to anxiety. Ms. Whitehead, the H.R. manager, also testified about the "inherently disruptive" nature of the incident and subsequent investigation. Thus Plaintiff's statement there is "no evidence" of a disruption in the workplace is not supported by the record.

The defendant need only establish the fourth or fifth step to prevail. As to the fifth *Pickering* issue, whether the Defendant would have discharged Plaintiff even absent the protected speech, Plaintiff again relies on the testimony of White that the statement and gesture precipitated the discharge. As discussed at step three, it does not appear Defendant could establish Plaintiff would have been discharged in the absence of the threat and simulated rifle shooting gesture.

### IV. Conclusion

Plaintiff is not entitled to summary judgment. There are genuine disputes of fact concerning the context in which the statement was made. There is also a dispute of fact concerning exactly what was said. Plaintiff has not established as a matter of law that he spoke on a matter of public concern. The evidence in the summary judgment record also reflects the statement had a disruptive impact on the workplace, particularly in regard to Ms. Pritchard missing work due to anxiety, and the jury could so find.

**IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Partial Summary Judgment (ECF No. 22) is **DENIED**.
2. The matter remains set for final Pretrial Conference on **June 23, 2017**, at 9:30 a.m. and for jury trial on **July 10, 2017**, at 9:00 a.m.

3. Trial briefs, requested jury instructions, and requested jury voir dire were due on or before **June 1, 2017**.

4. Counsel are reminded of the provisions regarding Local Rule 16.1(b). The parties are required to confer in good faith in an attempt to formulate a pretrial order. If the parties cannot agree on a pretrial order, each shall prepare a proposed pretrial order, to be served and filed no later than **June 16, 2017.**

**IT IS SO ORDERED**. The Clerk is hereby directed to enter this Order and furnish copies to counsel.

**DATED** this 5th day of June, 2017.

s/ Justin L. Quackenbush
JUSTIN L. QUACKENBUSH
SENIOR UNITED STATES DISTRICT JUDGE